IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOMMY BROWN , <br><br> Plaintiff, <br><br> v. <br><br> BIDDING UNLIMITED INCORPORATED <br><br> Defendant. | Civil Action No. <br><br> COMPLAINT FOR INJUNCTION |

**COMPLAINT FOR PERMANENT INJUNCTION
REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF
DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

Tommy Brown ("Plaintiff") seeks a permanent injunction requiring a change in Bidding Unlimited Incorporated's ("Defendant" or "Bidz") corporate policies to cause Bidz's website to become, and remain, accessible to individuals with visual disabilities. In support thereof, Plaintiff respectfully assert as follows:

## INTRODUCTION

1. "Being unable to access websites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013).[1]

2. Tommy Brown went blind when he was just 8-years old. Today, he uses a screen reader to navigate the Internet.

---

[1] Available at https://www.justice.gov/iso/opa/ola/witness/05-14-13-crt-hill-testimony-re-the-americans-with-disabilities-act-and-entertain.201372314.pdf) (last accessed Dec. 1, 2017).

3. Screen readers convert a website's text, buttons, links, and text fields to audio. Without screen reader programs, blind or visually impaired individuals cannot independently access the Internet, where everyday activities such as shopping, banking, research, and education have become commonplace.

4. Bidz is an online retailer that sells 330 brands of watches, jewelry, and other accessories, including brands like Gucci, Lamborghini, and Vera Wang. According to its Facebook page, "Bidz has operated successfully as an online auction business for more than 15 years. We close about 15 thousand auctions per day and sell more than 600 thousand jewelry items per year."[2]

5. Bidz offers these online goods and services at its website, www.bidz.com ("Website"), which it owns, operates, and controls.[3]

6. Bidz's Website allows consumers to search for, bid on, and purchase Bidz's wide variety of products.

7. Through the Website, consumers may also contact Bidz's customer service, access warranty information, check the status of their orders, and access Bidz's Return Policy.

8. Unfortunately, Bidz denies approximately 7 million[4] Americans who are visually impaired access to its Website's goods, content, and services because the Website is largely

---

[2] Available at https://www.facebook.com/pg/BidzAuction/about/?ref=page_internal (last accessed Dec. 1, 2017).
[3] *See* Terms and Conditions (available at https://www.bidz.com/support/articles/terms-and-conditions) (last accessed Dec. 1, 2017) ("This Site Access and Purchase Agreement (this Agreement) is a legal contract between you, Bidding Unlimited Incorporated "DBA" Bidz.com and contains the terms and conditions for access to and use of the website and marketplace located at www.bidz.com (the Site).).
[4] Perkins School of the Blind (Watertown, MA), *America's Blind Spot: What's Preventing Us From Including Those Who Are Blind in the Sighted World?*, p. 5, *available at* http://www.perkins.org/sites/default/files/perkins-americas-blind-spot-ebook.pdf (last accessed December 1, 2017).

incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world.

9. Plaintiff brings this civil rights action against Bidz to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

10. By failing to make its Website available in a manner compatible with computer screen reader programs, Bidz, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

11. Because Bidz's Website has never been accessible and because Bidz does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

    a) that Bidz retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Website so the goods and services on it may be equally accessed and enjoyed by individuals with vision related disabilities;

b) that Bidz work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis, including onsite training to create accessible content at the design and development stages;

c) that Bidz work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Bidz's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

d) that Bidz work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Bidz's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

e) that Bidz work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems; and

f) that Plaintiff, their counsel and its experts monitor the Website for up to two years after the Mutually Agreed Upon Consultant validates the Website is free of accessibility errors/violations to ensure Bidz has adopted and implemented adequate accessibility policies.

12. Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

13. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

14. Bidz purposefully targets and otherwise solicits business from Pennsylvania residents through its Website. Because of this targeting, it is not unusual for Bidz to conduct business with Pennsylvania residents. In fact, the opposite is true: Bidz clearly does business over the Internet with Pennsylvania residents, having entered into contracts with Pennsylvania residents that involve the knowing and repeated transmission of computer files over the Internet. *See Gniewkowski v. Lettuce Entertain You*, Order, ECF No. 123 (W.D. Pa Apr. 25, 2017) *clarified by* Order of Court, ECF No. 169 (W.D. Pa. June 22, 2017) (Judge Schwab) (The court exercised personal jurisdiction over an out-of-forum defendant for claims its website is inaccessible to a visually disabled resident of the forum state.).

15. Venue in this District is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff Brown's claims occurred.

## PARTIES

16. Plaintiff Brown is and, at all times relevant hereto, has been a resident of Allegheny County, Pennsylvania. Plaintiff Brown is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

17. Defendant, Bidding Unlimited Incorporated, is a Delaware Corporation with its principle place of business is located at 639 S. Broadway Floor 8, Los Angeles, CA 90014. Bidz's Website is a public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTS APPLICABLE TO ALL CLAIMS

18. While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods, content, and services for people with

5

perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

19. Individuals with vision related disabilities may access websites using screen reader programs that convert text to audio. Screen reader software provides the primary method by which a blind person may independently use the Internet. Unless websites are designed to be read by screen reader software, individuals suffering visual impairments are unable to fully access websites and the content and services they make available.

## BIDZ'S ONLINE CONTENT

20. Bidz's Website offers 330 brands of watches, jewelry, and other accessories, including brands like Gucci, Lamborghini, and Vera Wang. Bidz's Website allows consumers to search for, bid on, and purchase Bidz's wide variety of products.

21. Through the Website, consumers may also contact Bidz's customer service, access warranty information, check the status of their orders, and access Bidz's Return Policy

22. Consumers can also use the Website to create personal accounts, and sign up for emails to receive notifications they would not receive but for so registering.

23. Consumers may use the Website to connect with Bidz on social media, using sites like Facebook, Instagram, Pinterest, and Twitter.

24. The Website also includes important information about Bidz's Terms and Conditions, Return Policy, Privacy Policy, Payment & Shipping, and FAQ's.

**HARM TO PLAINTIFF**

25. Plaintiff Brown has attempted to use Bidz's Website. Unfortunately, because of Bidz's failure to build its Website in a matter that is compatible with screen reader programs, he is unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use.

26. Mr. Brown attempted to access the Website with the same screen reader program he uses to browse the Internet, but found it to be largely unusable due to various accessibility barriers. For example:

    (a) Mr. Brown attempted to register for a Bidz account. After he activated, or "clicked," "REGISTER" on the Website, he encountered a popup dialogue box. Unfortunately, his screen reader could not perceive the form fields in this popup, making it impossible for him to input the correct information. As a result, Mr. Brown could not register for an account.

    (b) The website's heading levels are missing and/or are out of order, such that Mr. Brown cannot navigate the website without frustration.

    (c) Buttons throughout the website lack proper labels, making Mr. Brown's navigation of the Website an exercise of trial and error.

    (d) There are drop down menus that are only visible to mouse users. The Website does not announce these drop down submenus to screen reader users. As a result, screen reader users are blocked from content linked in these drop down submenus.

27. As a result of visiting Bidz's Website and from investigations performed on his behalf, Plaintiff is aware the Website includes at least the following additional barriers blocking his full and equal use:

    (a) The Website does not provide a text equivalent for every non-text element;

(b) Headings and labels lack proper descriptions of their topic or purpose;

(c) The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

(d) Web pages lack titles that describe their topic or purpose;

(e) Text cannot be resized up to 200 percent without assistive technology so that it may still be viewed without loss of content or functionality;

(f) In content implemented using markup languages, elements do not always have complete start and end tags, are not nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

(g) The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

28. These barriers, and others, have denied Plaintiff full and equal access to all of the services the Website offers, and now deter him from attempting to use the Website. Still, Plaintiff would like to, and intends to, attempt to access Bidz's Website in the future to research the products and services the Website offers, or to test the Website for compliance with the ADA.

29. If the Website were accessible, *i.e.* if Bidz removed the access barriers described above, Plaintiff could independently research and shop for products, view Bidz's Policies, and contact customer service, via Bidz's Website.

30. Though Bidz has centralized policies regarding the maintenance and operation of its Website, Bidz has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

31. The law requires that Bidz reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

32. Plaintiff's above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, and U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or mandated that the public-facing pages of website complies with an international compliance standard known as Web Content Accessibility Guidelines version 2.0 AA ("WCAG 2.0 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C").[5]

33. All parties have been, and in the absence of an injunction will continue to be, injured by Bidz's failure to provide its online content and services in a manner that is compatible with screen reader technology.

### BIDZ'S KNOWLEDGE OF WEBSITE ACCESSIBILITY REQUIREMENTS

34. Bidz has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

35. Indeed, the Disability Rights Section of the DOJ reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts that it has been a "longstanding position" of the Department of Justice "that the ADA applies to websites of public accommodations." *See National Association of the Deaf v. Massachusetts Institute of Technology*, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc.

---

[5] Available at https://www.w3.org/) (last accessed Dec. 1, 2017).

34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); *see also National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

## THE PARTIES HAVE NO ADMINISTRATIVE REMEDIES TO PURSUE

36. There is no DOJ administrative proceeding that could provide Plaintiff with Title III injunctive relief.

37. While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiff with relief.

38. Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of effective communication matters.

39. Resolution of Plaintiff's claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, *e.g.* (a) whether Bidz offers content and services on its Website, and (b) whether Plaintiff can access the content and services.

## SUBSTANTIVE VIOLATION
### (Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)

40. The assertions contained in the previous paragraphs are incorporated by reference.

41. Bidz's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). *See Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, No. 16-cv-1898, 2017 WL 1437199, at *8-9 (W.D. Pa. Apr. 21, 2017) (Judge Schwab) ("Importantly, however, in both *Ford* and *Peoples*, the alleged discrimination occurred at a location where neither the insurance carrier in *Ford,* nor the credit card company in *Peoples,* had

ownership or possession, or exercised control. Conversely, in the instant matter, the alleged discrimination has taken place on property that AmeriServ owns, operates and controls—the AmeriServ Website.").

42. In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent Bidz does not provide Plaintiff with full and equal access to its Website, it has violated the ADA.

43. In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. *Id.; see also* MIT Statement of Interest, p. 4; Harvard Statement of Interest, p. 4.

44. Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service, or fails to provide a like experience to the disabled person.

45. Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

46.     In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

47.     By failing to provide its Website's content and services in a manner that is compatible with auxiliary aids, Bidz has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

(a)     denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available on Bidz's Website;

(b)     affording individuals with visual disabilities access to Bidz's Website that is not equal to, or effective as, that afforded others;

(c)     utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

(d)     denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

(e)     failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

48. Bidz has violated Title III by, without limitation, failing to make its Website's services accessible by screen reader programs, thereby denying individuals with visual disabilities the benefits of the Website, providing them with benefits that are not equal to those it provides others, and denying them effective communication. *See Gniewkowski v. Lettuce Entertain You*, 2017 WL 1437199, at *8-9 ("This Court finds that because AmeriServ owns, operates, and controls the property through which persons access its services, this matter is distinguishable from the *Ford* and *Peoples* cases. This Court also finds that the allegations set forth in Plaintiff's Complaint establish that the alleged discrimination—Plaintiffs' inability to access financial services information—took place at a property that AmeriServ owns, operates, and controls. Accordingly, the Court will deny AmeriServ's 12(b)(6) Motion because Plaintiffs have properly pled a legally cognizable claim under Title III of the ADA.").

49. Bidz has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Website to be made available without consideration of consumers who can only access the company's online goods, content, and services with screen reader programs.

50. Making its online goods, content, and services compatible with screen reader programs does not change the content of Bidz's Website or result in making the Website different, but rather enables individuals with visual disabilities to access the Website Bidz already provides. *See* MIT Statement of Interest, p. 20; *see also* Harvard Statement of Interest, p. 20.

51. Bidz's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and other individuals with visual disabilities.

52. Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

53. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

54. A Declaratory Judgment that at the commencement of this action Bidz was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Bidz took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, individuals with visual disabilities;

55. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Bidz to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Bidz has adopted and is following an institutional policy that will in fact cause Bidz to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in paragraph 11 above.

56. Payment of costs of suit;

57. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (*see Hadix v. Johnson*, 143 F.3d 246 (6th Cir. 1998), *aff'd in part, rev'd in part*, 527 U.S. 343 (1999); *Jenkins v.*

*Missouri*, 127 F.3d 709 (8th Cir. 1997); *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996); *Stewart v. Gates*, 987 F.2d 1450, 1452 (9th Cir. 1993) (district court should permit compensation for the post judgment monitoring efforts by the plaintiff's counsel that are "useful and necessary to ensure compliance with the court's orders"); *Garrity v. Sununu*, 752 F.2d 727, 738-39 (1st Cir. 1984); *Adams v. Mathis*, 752 F.2d 553 (11th Cir. 1985); *Willie M. v. Hunt*, 732 F.2d 383, 385, 387 (4th Cir. 1984); *Bond v. Stanton*, 630 F.2d 1231, 1233-34 (7th Cir. 1980); *Northcross v. Board of Educ.*, 611 F.2d 624, 637 (6th Cir. 1979) ("Services devoted to reasonable monitoring of the court's decrees, both to ensure full compliance and to ensure that the plan is indeed working . . . are essential to the long-term success of the plaintiff's suit.") (citing 3rd Circuit's support for District Court's award of prospective fees to plaintiff's counsel); and

58.     The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: December 1, 2017                              Respectfully Submitted,


                                                     */s/ Benjamin J. Sweet*
                                                     Benjamin J. Sweet (PA Bar No. 87338)
                                                     bsweet@carlsonlynch.com
                                                     Kevin W. Tucker (PA Bar No. 312144)
                                                     ktucker@carlsonlynch.com

                                                     **CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
                                                     1133 Penn Avenue, 5th Floor
                                                     Pittsburgh, PA 15222
                                                     Phone: (412) 322.9243

                                                     *Counsel for Plaintiff*